# GERMAN SAVINGS BANK *v.* FRANKLIN COUNTY.

## APPEAL FROM THE CIRCUIT COURT OF THE UNITED STATES FOR THE SOUTHERN DISTRICT OF ILLINOIS.

### No. 46. Submitted October 29, 1888. — Decided December 10, 1888.

Bonds issued by Franklin County, Illinois, to the Belleville and Eldorado ·. Railroad Company, in November, 1877, held invalid.

The vote of the people of the county in favor of ·subscribing to the stock of the company was taken in September, 1869, the subscription to be ꞉ payable in bonds, which were to be issued only on compliance with a specified condition, as to the time of completing the road through the county. At the time of the vote, the act of April 16, 1869, was in force authorizing the county to prescribe the conditions on which the subscription should be made, and declaring that it should not be valid until such· condition precedent should have been complied with. The bonds were issued without a compliance with the condition; *Held,* that, under the constitution of Illinois, which took effect July 2, 1870, the issuing of the bonds was unlawful, because it had not been authorized by a vote of the people of the county taken prior to the adoption of the constitution.

Before the bonds were issued the Supreme Court of Illinois, in *Town of* . *Eagle* v. *Kohn,* 84 Ill. 292, had decided the meaning of the act of April 16, 1869, to be that bonds issued without a compliance with such condition precedent were invalid, even in the hands of innocent holders without notice.

The fact that the bonds were registered by the state auditor, under the act of April 16, 1869, did not make them valid.

In EQUITY, to have certain bonds issued by the appellee declared void, and to restrain the collection of taxes to pay them. Decree in complainant's favor, from which the respondent appealed. The case is stated in the opinion of the court.

*Mr. E. E. Cook,* for appellant, cited : *Fairfield* v. *Gallatin County,* 100 U. S. 47; *Moultrie County* v. *Rockingham Savings Bank,* 92 U. S. 631; *Pana* v. *Bowler,* 107 U. S. 529; *Insurance Co.* v. *Bruce,* 105 U. S. 328; *Oregon* v. *Jennings,* 119 U. S. 74; *Richeson* v. *People,* 115 Illinois, 450; *Middleport* v. *Ætna Life Ins. Co.,* 82 Illinois, 562; *Eagle* v. *Kohn,* 84 Illinois, 292; *Knox County* v. *Aspinwall,* 21 How. 539; *Randolph* v. *Post,* 93 U. S. 502; *Supervisors* v. *Schenck,* 5 Wall. 772.

Mr. *Thomas J. Layman*, for appellee, cited: *Jackson County v. Brush*, 77 Illinois, 59; *Wright v. Bishop*, 88 Illinois, 302; *Middleport v. Ætna Life Ins. Co.*, 82 Illinois, 562; *People v. Jackson County*, 92 Illinois, 441; *People v. Waynesville*, 88 Illinois, 469; *McClure v. Oxford*, 94 U. S. 429; *Buchanan v. Litchfield*, 102 U. S. 278; *Chisholm v. Montgomery*, 2 Woods, 594; *The Floyd Acceptances*, 7 Wall. 666; *Miller v. Goodwin*, 70 Illinois, 659; *Elmwood v. Marcy*, 92 U. S. 289; *Taylor v. Wayne*, 25 Iowa, 447; *Van Inwagan v. Chicago*, 61 Illinois, 31; *Ill. & Mich. Canal v. Chicago*, 14 Illinois, 334; *Richardson v. Akin*, 87 Illinois, 138; *Newkirk v. Chapron*, 17 Illinois, 344; *Concord v. Portsmouth Savings Bank*, 92 U. S. 625; *State v. Saline County*, 45 Missouri, 242.

Mr. Justice BLATCHFORD delivered the opinion of the court.

This is a suit in equity, commenced on the 4th of August, 1880, by a bill in equity filed in the Franklin County Circuit Court, of the State of Illinois, by the county of Franklin, as plaintiff, against the Belleville and Eldorado Railroad Company, the county clerk of Franklin County, the sheriff and collector of that county, the auditor of public accounts of the State of Illinois, the treasurer of that State, four individuals alleged to be holders of bonds issued by the county, and the unknown holders of others of such bonds.

The bill was founded upon the alleged invalidity of the bonds. It sought an injunction to restrain the auditor of the State and the clerk of the county from taking measures to collect taxes to pay the interest on the bonds, and to restrain the railroad company and the holders of the bonds from bringing suit against the county on any of the coupons, and to restrain the state treasurer from paying the coupons, and to restrain the sheriff and collector of the county from collecting any more taxes to pay the interest on the bonds, and from paying to the state treasurer any money already collected to pay interest on them; and prayed for a decree declaring an election held in the county on the 11th of September, 1869, on the question of a subscription by the county to the capital

stock of the railroad company, to have been void, and a subscription made by the County Court of the county, on the 6th of November, 1869, to the capital stock of the company, and all. amendments, modifications and alterations of such subscription, to have been void, and a so-called subscription of $150,000 to the capital stock of the railroad company, made on the 13th of December, 1876, and an attempt made on the 12th of November, 1877, to amend such subscription and to contract for the building of the railroad; to have been void, and the bonds and coupons to be void, and for a decree requiring the holders of them to surrender them for destruction, and for a perpetual injunction to the above effect, and for general relief.

On the 27th of October, 1880, on due proof of personal service of process on the railroad company, the county clerk of the county, the sheriff and collector of the county, the auditor of public accounts of the State, and the state treasurer, and on proof of due publication as to the defendants named in the bill as holders of the bonds, and as to the unknown holders of them, and there having been no appearance for any defendant, the cause was heard on the bill taken as confessed, and a decree made adjudging the invalidity of the bonds, and granting the relief asked for in the bill.

On the 27th of October, 1881, the German Savings Bank, of Davenport, Iowa, as the owner of nine of the bonds of the county, of $1000 each, (and of eighteen others of the bonds, of $1000 each, not involved in the present appeal,) was, on a motion made to the state court, permitted to defend the suit and to answer the bill. It filed its answer in that court, setting up that it had purchased the bonds in good faith, for a valuable consideration, and without notice of any defence or objection to the validity of any of them, before they were due, and before any default had been made in the payment of any interest on any of them, and before the suit was brought; and that the bonds were valid. At the same time, it filed a petition and a bond for the removal of the cause into the Circuit Court of the United States for the Southern District of Illinois. A copy of the record from the state court was filed in the

Circuit Court on the 21st of December, 1881, and the cause afterwards proceeded therein.

A replication was filed to the answer of the Savings Bank, various holders of the bonds were made defendants and answered, and some of them filed cross-bills, proofs were taken, and it was stipulated between the parties that each defendant was, at the commencement of the suit, a *bona fide* holder of the bonds specified in the respective answers, and that they purchased the same for value, without any notice of defence.

The nine bonds held by the Savings Bank, involved in the present appeal, are all alike except as to the number, and each one has upon it a certificate of the auditor of public accounts of the State of Illinois, the bond and the certificate being in the form following:

"UNITED STATES OF AMERICA, STATE OF ILLINOIS.

"No. 15. Franklin County, eight per cent railroad bond. $1000.

"Know all men by these presents, That the county of Franklin, in the State of Illinois, acknowledges itself to be indebted to the Belleville and Eldorado Railroad Company, or bearer, in the sum of one thousand dollars, which sum the said county, for value received, promises to pay said company or bearer, in the city and State of New York, twenty years after date, (payable at any time after five years, and before this bond becomes due, at the option of said county of Franklin,) with interest thereon from and after the fifteenth day of November, A.D. 1877, at the rate of eight per cent per annum, payable semi-annually on the first days of January and July of each year, on the presentation and surrender, at the place in the said city of New York where the treasurer of the State of Illinois pays the interest and debt of said State, of the coupons hereto attached, as they severally become due.

"This bond is one of a series of fifty of like tenor, for the sum of one thousand dollars each, numbered from one to fifty, inclusive, issued under the provisions of an act of the General Assembly of the State of Illinois entitled 'An act to authorize cities and counties to subscribe stock to railroads,' approved

November 6th, A.D. 1849, and authorized by a majority of the qualified voters of said county of Franklin at an election held in said county on the 11th day of September, A.D. 1869, in accordance with the provisions of said act.

"In testimony whereof, the said county of Franklin has executed this bond, by the chairman of the board of supervisors, under the order of the board of supervisors of said county, signing his name hereto, and by the clerk of said board, under the order thereof, attesting the same and affixing hereto the seal of said county. This done at the office of the clerk of said board, this thirteenth day of November, A.D. 1877.

"JOHN J. ST. CLAIR,
" *Chairman of Board of Supervisors of Franklin Co., Illinois.*
"[SEAL.]                     "EVAN FITZGERRELL,
" *Clerk of Board of Supervisors of Franklin Co., Illinois.*"

"AUDITOR'S OFFICE, ILLINOIS,
"SPRINGFIELD, *October 24th,* 1879.

"I, Thomas B. Needles, auditor of public accounts of the State of Illinois, do hereby certify, that the within bond has been registered in this office this day pursuant to the provisions of an act entitled 'An act to fund and provide for paying the railroad debts of counties, townships, cities and towns,' in force April 16th, 1869.

"In testimony whereof, I hereunto subscribe my name and affix the seal at my office, at Springfield, the day and year first above written.

"[SEAL.]        "(Signed)           "T. B. NEEDLES,
" *Auditor Public Accounts.*"

The nine bonds involved in this appeal were purchased by the Savings Bank at Davenport, Iowa, four of them for 99 per cent and accrued interest, on the 13th of April, 1880, and five of them at the same price, on the 15th of May, 1880. None of them, and none of the coupons on them at the time of purchase, were overdue; and the first instalment of interest which fell due on them after they were purchased by the Savings Bank was duly paid by the county.

A copy taken from the records in the office of the clerk of the county, of all the proceedings of the County Court and of the board of supervisors of the county, relative to the election and to the subscription by the county to the stock of the railroad company, was put in evidence.

On final hearing, the Circuit Court made a decree, on July 3d, 1883, adjudging that the nine bonds in question were issued without authority of law, and were void, and awarding a perpetual injunction in regard to them, as prayed in the bill. From that decree the Savings Bank has appealed.

The record shows the following facts: On the 24th of July, 1869, the County Court of Franklin County, purporting to do so under the authority of an act of the General Assembly of Illinois, entitled "An act to incorporate the Belleville and Eldorado Railroad Company," approved February 22d, 1861, and an act of the General Assembly, approved November 6th, 1849, authorizing counties to take stock in railroad companies, made an order, submitting to the voters of the county, to be voted upon on the 11th of September, 1869, a proposition to subscribe $200,000 to the capital stock of that company, payable in county bonds at par, due in 20 years from date, with interest payable semiannually at the rate of eight per cent per annum, and to be of denominations of not less than $1000 each, the bonds to be issued upon certain specified conditions and not until they were complied with, one of the conditions being, "that said railroad shall be commenced in the county of Franklin within nine months from the date of said election, and completed through the county by the 1st day of June, 1872."

On the 6th of November, 1869, the County Court made an order, reciting that the election had been held on the 11th of September, 1869, in pursuance of the order of July 24th, 1869; that, at such election, the qualified voters of the county did, by a majority of their votes, (taking as a standard the number of votes cast for county officers at the last general election previous to such vote had upon the question of subscription,) authorize the County Court of the county to subscribe the sum of $200,000 to the capital stock of the railroad

company; and declaring that, by authority of such vote and of the acts of February 22d, 1861, and November 6th, 1849, the county of Franklin "does hereby subscribe" to the capital stock of the company $100,000, by virtue of the act of February 22d, 1861, and the further sum of $100,000, by virtue of the act of November 6th, 1849, the stock to be payable in the bonds of the county, to be due in 20 years after the date thereof, and to draw interest, payable semiannually, at the rate of eight per cent per annum, and to be of the denomination of not less than $1000 each. The order proceeded: "It is further ordered and considered by the court, that said bonds are to be issued upon the following conditions, and never until they are complied with — that is to say." One of the conditions specified was, "that said railroad shall be commenced in the county of Franklin within nine months from the date of said election, and completed through the county by the first day of June, A.D. 1872." There was nothing in that order of November 6th, 1869, which authorized or directed any person to make any subscription to stock on behalf of the county on the books of the railroad company, nor is there any evidence in the record showing that that company ever assented to or accepted any subscription under that order.

On the 6th of February, 1871, the County Court made an order reciting the fact of the subscription directed to be made by the order of November 6th, 1869, and that it required that the railroad should be commenced in the county of Franklin within nine months from the date of the election authorizing the subscription to be made, namely, by the 11th of June, 1870, and be completed through the county by the 1st of June, 1872, and that the time for commencing the building of the road had expired; and it therefore ordered, that the time for commencing and completing the road be extended, and that the subscription be made on the stock books of the railroad company "upon the following terms and conditions, and not until they are fully complied with," namely, the $200,000 to be payable in the bonds of the county at par, to be due in 20 years from the date thereof, and to draw interest, payable semiannually, at the rate of eight per cent per annum, and to

be of the denomination of not less than $1000 each; that the railroad should be commenced in the county of Franklin on or before January 1st, 1872, and be completed through the county by the 1st of January, 1874; with other conditions. This order of February 6th, 1871, was the first order of the County Court which authorized a subscription to stock to be made on the books of the railroad company; but the record contains no evidence that the subscription so authorized by that order was ever made on the books of the company, or that the company assented to or accepted such subscription.

On the 9th of March, 1871, the County Court made an order reciting the fact of the election of the 11th of September, 1869, and that a majority of the legal voters of the county voted for the subscription of $200,000 to the stock of the company; and it then stated that the county did, by such order of the 9th of March, 1871, subscribe the sum of $200,000 for 2000 shares of the capital stock of the company, the stock to be subscribed and the bonds to be issued "upon the following conditions, and not until they were fully complied with," the stock to be paid for in Franklin County bonds at par, payable in 20 years after date, with interest at 8 per cent per annum, payable semi-annually in New York, and to be of the denomination of $1000 each, with interest-coupons attached. It then specified when the bonds were to be delivered, and one of the conditions prescribed was, "the said railroad to be commenced within the county in one year, and completed through the county within three years from the date of this subscription."

On the 13th of December, 1876, the board of supervisors of the county, which had taken the place of the County Court in respect to the matter in question, made an order, which recited the fact of the election of September 11th, 1869, and the result and terms of the vote, and then proceeded to state, that the board, by authority of the vote and of the acts of February 22d, 1861, and November 6th, 1849, did thereby subscribe to the capital stock of the company $150,000, being $75,000 by virtue of each of the two acts, payable in bonds of the county at par, the bonds to be due in 20 years, and to be payable after the expiration of five years from their date, at the option

of the county, and to draw interest at the rate of 8 per cent per annum, payable semiannually, and to be of the denomination of not less than $1000 each, the bonds to be issued and placed in the hands of a trustee, to be paid out on certain specified conditions, one of which was, that the railroad should be commenced within 30 days from the date of the order, and be completed by the 15th of October, 1877.

There is nothing in the record to show that, down to the 13th of December, 1876, any subscription to stock had been made on behalf of the county on the books of the railroad company, or that the company had accepted or assented to any subscription by the county. Nor is there anything in the record which shows that any subscription was made on the books of the company before the 6th of March, 1877, and it appears that the subscription made on the books of the company was for $150,000 of stock.

On the 13th of September, 1877, the board of supervisors extended the time for the building of the road until the 15th of March, 1878.

On the 12th of November, 1877, the board of supervisors made an order amending the order of December 13th, 1876, subscribing $150,000 to the stock of the company, so as to read, that the county, under the act of February 22d, 1861, and in accordance with the vote of September 11th, 1869, subscribed $100,000 to the stock, payable in bonds of the county at par, the bonds to be due 20 years after their date, and payable, at the option of the county, after 5 years, and to bear interest at the rate of 8 per cent per annum, payable semiannually, and to be of the denomination of $1000 each, and that the county, under the act of November 6th, 1849, and under such vote, subscribed $50,000 to the stock of the company, payable in bonds of the like tenor. The order directed the chairman of the board and its clerk to execute 100 bonds of $1000 each, and of the above tenor, for the subscription under the act of February 22d, 1861, and 50 bonds of $1000 each, of the above tenor, for the subscription under the act of November 6th, 1849, the bonds to be placed in the hands of a trustee and to be delivered to the railroad company " only on the same condi-

tions and under the same restrictions as specified in the order" of the board of December 13, 1876.

The bonds were issued, bearing date November 13th, 1877. The board of supervisors subsequently extended the time for the completion of the road to the 15th of September, 1878, and again to the 1st of November, 1879. The evidence shows that no part of the road was completed within Franklin County prior to January, 1877, and that it was not completed through Franklin County until about the 1st of November, 1879.

We are of opinion that the decree of the Circuit Court must be affirmed. At the time the vote of September 11th, 1869, was had, the act of the General Assembly of Illinois, which became a law on the 16th of April, 1869, entitled "An act to fund and provide for paying the railroad debts of counties, townships, cities and towns," Laws of Illinois of 1869, p. 316, was in force. Section 2 of that act provided that bonds to be issued in payment of a debt created by a county, to aid in the construction of a railroad, should, in order to receive the benefits of that act, be registered by the holder thereof at the office of the auditor of public accounts, who should cause the same to be registered in a book kept for that purpose. The same section provided, that the registration should show the date, amount, number, maturity and rate of interest of each bond, and under what act and by what county issued, and that the auditor should, under his seal of office, certify upon each bond the fact of such registration. Section 7 of the same act was in these words: "And it shall not be lawful to register any bonds under the provisions of this act, or to receive any of the benefits or advantages to be derived from this act, until after the railroad, in aid of the construction of which the debt was incurred, shall have been completed near to or in such county, township, city, or town, and cars shall have run thereon; and none of the benefits, advantages or provisions of this act shall apply to any debt, unless the subscription or donation creating such debt was first submitted to an election of the legal voters of said county, township, city or town, under the provisions of the laws of this State, and a majority

of the legal voters living in said county, township, city or town were in favor of such aid, subscription or donation; and any county, township, city or town shall have the right, upon making any subscription or donation to any railroad company, to prescribe the conditions upon which such bonds, subscriptions, or donations shall be made, and such bonds, subscriptions or donations shall not be valid and binding until such conditions precedent shall have been complied with. And the presiding judge of the County Court, or the supervisor of the township, or the chief executive officer of the city or town, that shall have issued bonds to any railway or railways, immediately upon the completion of the same near to, into or through such county, township, city or town, as may have been agreed upon, and the running of the cars thereon, shall certify under oath that all the preliminary conditions in this act required to be done to authorize the registration of such bonds, and to entitle them to the benefits of this act, have been complied with, and shall transmit the same to the state auditor, with a statement of the date, amount, number, maturity and rate of interest of such bonds, and to what company and under what law issued; and thereupon the said bonds shall be subject to registration by the state auditor, as is hereinbefore provided."

The constitution of Illinois, which took effect July 2d, 1870, provides as follows: "No county, city, town, township, or other municipality, shall ever become subscriber to the capital stock of any railroad or private corporation, or make donation to or loan its credit in aid of such corporation: *Provided, however*, That the adoption of this article shall not be construed as affecting the right of any such municipality to make such subscriptions where the same have been authorized, under existing laws, by a vote of the people of such municipalities prior to such adoption."

In the present case, the only vote of the people of the county of Franklin had prior to July 2d, 1870, authorizing a subscription to the capital stock of the railroad company, was the vote of September 11th, 1869. By § 7 of the act of April 16th, 1869, then in force, the county had the right, in

voting for the subscription, to prescribe the conditions upon which the subscription should be made; and that section declared, that such subscription should not be valid and binding until such conditions precedent should have been complied with. Under such circumstances, any condition imposed by the vote, as a condition precedent to the issuing of the bonds in payment of the subscription, was a part of the vote, and a part of the authority for the subscription, within the meaning of the proviso to the article of the constitution above cited. So, also, any condition prescribed by the vote as a condition precedent upon which the bonds should be issued, must, have been complied with, in order to make the bonds valid and binding. In the present case, the vote of September 11th, 1869, as a vote in favor of the subscription of $200,000 to the stock, payable in the bonds described in the order of the County Court of July 24th, 1869, was a vote in favor of such subscription, payable in the bonds, "said bonds to be issued," (in the language of the order of July 24th, 1869, directing the election to be held,) "upon the following conditions, and not until they are complied with." One of those conditions was that the railroad "should be commenced in the county of Franklin within nine months from the date of such election, and completed through the county by the 1st day of June, 1872." The bonds in question were not issued until November, 1877, and the road was not completed through the county until about the 1st of November, 1879. No change was made in the conditions prescribed by the vote, prior to the 2d of July, 1870, and there was no power, after that, to make any material change in those terms and conditions.

The evident purpose of the provision of § 7 of the act of April 16th, 1869, was to prevent the issue of bonds in payment of subscriptions to railroad companies until the conditions imposed by the vote, as conditions precedent, had been complied with, and to declare that the bonds, if issued in violation of such conditions precedent, should not be valid and binding. When the Savings Bank, in April and May, 1880, purchased the bonds in question, it was, notwithstanding the recitals on the face of them, chargeable with notice of the

provision of § 7 of the act of April 16th, 1869, which had been in force for nearly five months before the date named on the ·face of the bonds as the date of the election, and for more than eight years before the date named on the face of the bonds as the ·date of their issue. It was also required to take notice of the construction given to such statutory provision by the Supreme Court of Illinois, at its September Term, 1876, prior to the issue of these bonds, in the case of *Town of Eagle* v. *Kohn*, 84 Illinois, 292.

That was a suit against the town of Eagle, brought by inno- .cent holders for value, to recover on coupons cut from bonds issued by the town ·to a railroad company, December 1st, 1870, in payment of a subscription to stock, in pursuance of a vote of the people of the ·town, had November 2d, 1869. In that vote, certain conditions as to time had been prescribed, upon which the bonds should be issued. Those conditions had not been complied with. The question arose in the case, whether the declaration of the statute, that the bonds should not be valid and binding until such conditions precedent should have been complied with,. was to be confined, in its operation, to the railroad company to which the bonds should have been issued, or whether it .extended to innocent holders for value. The court held that, although the statute did not declare that the bonds should be void, its declaration that they should not be, valid and binding until the conditions precedent should have been complied with, was an imperative and peremptory declaration that the bonds should not be valid and binding until the conditions named should have been complied with, even in the hands of innocent holders without notice; and it declared the bonds to be invalid in the hands of the plaintiffs.

This interpretation of § 7 of the act of April 16th, 1869, accompanied all ·bonds subsequently issued into the hands of· whoever took them, whether a *bona fide* holder or not. This court must ·recognize this decision of the Supreme Court of Illinois as an authoritative construction of the statute, made before the bonds were issued, and to be followed by this court. *Douglass* v. *County of Pike*, 101 U. S. 677; *Burgess* v. *Seligman*, 107 U. S. 20; *Green County* v. *Conness*, 109 U. S. 104;

*Anderson* v. *Santa Anna*, 116 U. S. 356. In the first of these cases it was said: " After a statute has been settled by judicial construction, the construction becomes, so far as contract rights acquired under it are concerned, as much a part of the statute as the text itself."

The ruling in *Town of Eagle* v. *Kohn* was followed by the Supreme Court of Illinois in *Richeson* v. *The People*, 115 Illinois, 450, in January, 1886, and was applied by that court to the bonds issued November 13th, 1877, by the county of Franklin to the same railroad company, under the act of February 22d, 1861, purporting to have been issued in pursuance of the same vote of September 11th, 1869, as in the present case. The court, referring to its decision in *Town of Eagle* v. *Kohn*, made at September Term, 1876, said, p. 460: " We there held that bonds in the hands of innocent purchasers were not valid, where the conditions upon which the subscription was made have not been complied with. The language of the statute is plain and explicit; and unless it should be arbitrarily disregarded, we perceive no ground upon which an innocent holder can evade its provisions." This view was held, as the court said, because, when the vote was taken, the 7th section of the act of April 16th, 1869, was in force. See, also, *Parker* v. *Smith*, 3 Bradwell, App. Ill. 356, 366, 367.

In regard to the case of *Town of Eagle* v. *Kohn*, it is urged by the Savings Bank, that it does not appear, by the report of that case, that the bonds there in question had been registered by the state auditor, as contemplated by the act of April 16th, 1869; that the provisions of §§ 2 and 7 of the act of April 16th, 1869, imply that the state auditor shall ascertain and determine whether or not the evidence is sufficient to authorize him to register the bonds and to indorse thereon his certificate of registration; that it must be presumed that the presiding judge of the County Court, whose duty it was, under § 7, to certify to the auditor that all the preliminary conditions required by the act to be done, to authorize the bonds to be registered and to entitle them to the benefits of the act, had been complied with, had performed his duty; that, after such registration and the certificate of the auditor on the

bonds had been made and other persons have .acquired rights in the bonds so registered and certified, upon the faith of the registration and certificate, those rights cannot be affected by subsequently showing that some of the facts entitling the bonds to registration did not exist; that, although bonds issued after the passage of the act of April 16th, 1869, were required to be registered in order to entitle them to the bene-fits of that act, a tribunal was provided to determine whether the conditions precedent upon which the bonds were to be issued had been complied with; that the decision of that tribunal, as evidenced by the registration of the bonds, is conclusive; and that the legislative intention must have been, that the registration of the bonds should settle definitively the question of compliance with the conditions precedent.

The answer to these suggestions is, that· the preliminary conditions required by § 7 of the act of April 16th, 1869, to exist, in order to authorize the registration of the bonds, are only that "the railroad in aid of the construction of which the debt was incurred shall have been completed near to or in such county, township, city or town, and cars shall have run thereon;" and that the subscription creating the debt should have been voted for by a majority of the legal voters of the county, township, city or town, living therein. Those preliminary conditions are the only ones which are required to be certified to, by the presiding judge of the county court, in order to authorize the registration of the bonds. It is not required by § 7, that the presiding judge of the County Court shall make any certificate as to a compliance with the terms and conditions of any subscription. Section 7 requires, as a preliminary to registration, that the railroad shall have been completed near to or in the county, and that cars shall have run thereon; but it does not require that the road shall have been completed by any time prescribed as a condition precedent. in the vote. The registration of the bonds by the state auditor has nothing to do with any of the terms or conditions on which the stock was voted and subscribed. Neither the registration nor the certificate of registry .covers or certifies any fact, as to compliance with the conditions prescribed. in

the vote, on which alone the bonds were to be issued. The recital in the bonds does not contain any reference to the act of April 16th, 1869, or certify any compliance with the provisions of that act; and the certificate of registry merely certifies that the bond has been registered in the auditor's office pursuant to the provisions of the act of April 16th, 1869. The statute does not require that the auditor shall determine or certify that the bonds have been regularly or legally issued. The case of *Lewis* v. *Commissioners*, 105 U. S. 739, does not aid the Savings Bank. In that case, under an act of Kansas in regard to registry, the auditor had certified that the bonds had been "regularly and legally" issued. In *Dixon County* v. *Field*, 111 U. S. 83, and in *Crow* v. *Oxford*, 119 U. S. 215, the first case arising in Nebraska, and the second in Kansas, the certificate of the auditor in each case was that the bonds were "regularly and legally" issued, but this court held, in both cases, that the municipality issuing the bonds was not estopped by the registry or the certificate, and that no conclusive effect was given by the registration statute to the registration or to the certificate.

The cases of *Insurance Co.* v. *Bruce*, 105 U. S. 328, *Pana* v. *Bowler*, 107 U. S. 529, and *Oregon* v. *Jennings*, 119 U. S. 74, are relied upon by the Savings Bank, in this case, to sustain its view that the decree of the Circuit Court was erroneous.

In the case of *Insurance Co.* v. *Bruce*, the bonds were issued by the town of Bruce, in the State of Illinois, on the 1st of December, 1870, in payment of a subscription to the capital stock of a railroad company. The bonds recited upon their face that they were issued by virtue of two statutes of the State, one of which was the before-named act of April 16th, 1869; and the bonds also certified on their face, that, at a special election held in the township, on the 7th of September, 1869, a majority of the legal voters participating at the same had voted in favor of the subscription and of the issue of the bonds. Certain of the conditions as to time, imposed by the vote of the people, had not been complied with, and the bonds were in the hands of *bona fide* holders

for value. In the opinion in that case, the terms of § 7 of the act, of April 16th, 1869, and the ruling in the case of *Town of Eagle* v. *Kohn* were considered; and the decision of this court, in favor of the bondholder, was placed upon the ground that the case was distinguishable from that of *Town of Eagle* v. *Kohn*, in that it did not appear from the latter case that the town had, by the recitals in its bonds, estopped itself from asserting, as against a *bona fide* holder, the non-performance of conditions imposed by the vote of the people, while, in the case then before this court, the town of Bruce had, by the recitals in its bonds, represented to the public that the bonds were issued in all respects in conformity to law, and that nothing remained to be done which was essential to its liability thereon. The view taken was that, as the town of Bruce had power, under the 7th section of the act of April 16th, 1869, to make an unconditional subscription, and to issue and deliver its bonds in advance of the construction of the road, and as the bonds recited that they were issued by virtue of the act of April 16th, 1869, it was too late for the town, as against *bona fide* purchasers of the bonds, to claim that they had been issued in violation of the special conditions. In the case now before us, as before said, there is no reference, in the bonds, to the act of April 16th, 1869, and no statement in the bonds that they were issued by virtue of that act. Moreover, in the case of *Insurance Co.* v. *Bruce*, the bonds had been issued on December 1st, 1870, prior to the decision in *Town of Eagle* v. *Kohn*, which was made at September Term, 1876.

In *Pana* v. *Bowler*, the bonds were issued by the town of Pana, in Illinois, June 23d, 1873, prior to the decision in *Town of Eagle* v. *Kohn*. The vote of the people of the township was had on April 30th, 1870, while the act of April 16th, 1869, was in force, and the bonds, as in the case of *Insurance Co.* v. *Bruce*, recited on their face, not only that they were issued in compliance with the vote, but that they were issued in accordance with the provisions of the act of April 16th, 1869. No point was raised in that case that, the bonds having been issued after the new constitution of Illinois came

into force, on July 2d, 1870, in pursuance of a vote of the people had on April 30th, 1870, conditions prescribed by that vote had not been complied with.

In *Oregon* v. *Jennings*, the bonds were issued on the 31st of December, 1870, nearly six years before the decision was made in *Town of Eagle* v. *Kohn*, and the election was held in the town of Oregon, Illinois, on the 23d of June, 1870. Section 7 of the act of April 16th, 1869, appears to have been considered by the court in that case, and it held, that the recitals in the bonds estopped the town from taking the defence, as against a *bona fide* holder of the bonds, that the first division of the road was not completed by the time specified in the vote of the people. The court observed, that it had been referred to no decision of the Supreme Court of Illinois, made prior to the issuing of the bonds in that case, namely, December 31st, 1870, which held to the contrary of the views it announced. But, in the present case, the decision in *Town of Eagle* v. *Kohn* was made prior to the issue of the bonds.

In *County of Randolph* v. *Post*, 93 U. S. 502, the bonds were issued by the county of Randolph, in Illinois, January 1st, 1872, under a vote of the people had June 6th, 1870, which imposed a limitation of time as a condition precedent. In October, 1871, the County Court extended the time from December 27th, 1871, to February 1st, 1872. This court held, that it could do so notwithstanding the provision, above cited, in the constitution of July 2d, 1870. But the act of April 16th, 1869, does not appear to have been before this court, and the decision in *Town of Eagle* v. *Kohn* was not made until more than six years after the vote was had, and more than four years after the bonds were issued, in *County of Randolph* v. *Post*.

In *Concord* v. *Robinson*, 121 U. S. 165, this court held, that subscriptions and donations in aid of railroads, voted by municipal corporations of Illinois, prior to July 2d, 1870, such vote being authorized by laws in force when it was taken, could be completed after that date, according to the conditions attached to the vote. In that case, the vote of the town of Concord, Illinois, had been had on November 20th, 1869, in

favor of levying a tax to raise a sum of money as a donation to a railroad company, provided the company should run the road through two specified villages. The road was never constructed into or through either of them, and the vote was not for the issue of bonds, but for levying a tax; but bonds were issued, in 1871, and this court held them void, in a suit against the town on coupons cut from them, the bonds reciting on their face that they were issued under and by virtue of a specified law of Illinois, which law, however, only authorized towns, including the town in question, to make a donation in aid of the particular road in question, the money to be raised by taxation.

Without considering other grounds on which our decision might be rested, we are of opinion that the decree of the Circuit Court must be

*Affirmed.*