## F. W. Cook Investment Company *v.* Evansville Terminal Railway.

[No. 21,771. Filed December 14, 1910.]

1. Corporations.—*Voluntary Associations.*—*Statutes.*—The voluntary associations act of 1901 (Acts 1901 p. 289) was intended to revise, consolidate, abridge and perfect the legislation on that subject; and the intent of the act of 1903 (Acts 1903 p. 180) was to extend the privileges of the act of 1901 to other industries and activities. p. 6.

2. Corporations.—*Voluntary Associations.*—*Street and Interurban Railroads.*—Under §1 of the act of 1903 (Acts 1903 p. 180), au-

thorizing the formation of corporations "for certain purposes not named" in the act of 1901 (Acts 1901 p. 289), and specifically providing for the formation of corporations "to promote, finance, construct, equip, rent and operate    *    *    *    street and interurban railroads    *    *    *    and to do all other things needful or connected therewith," corporations may be formed under said voluntary associations act of 1901 for the purpose of constructing street and interurban railroads.   p. 6.

3.   CORPORATIONS.—*Street and Interurban Railroads.—Eminent Domain.*—Neither the voluntary associations act of 1901 (Acts 1901 p. 289), nor the act of 1903 (Acts 1903 p. 180), expressly confers the right of eminent domain upon corporations formed thereunder, and such right cannot be implied.   pp. 7, 8.

4.   CORPORATIONS.—*Street and Interurban Railroads.—Light and Heat.*—A corporation formed under the act of 1903 (Acts 1903 p. 180) for the promotion, construction, equipment and operation of a street and interurban railroad, becomes a street and interurban railroad corporation; and the further announcement in its articles of association that it purposes "to promote plants for the creation and distribution of electric, and other heat, light and power," constitutes it also a light and heat company.   p. 7.

5.   EMINENT DOMAIN.—*Right to Exercise of.—Corporations.*—The test which determines the right of a corporation to exercise the right of eminent domain is, Is the proposed use of the land a public one?   p. 8.

6.   CORPORATIONS.—*Statutes under which Organized.*—Incorporators of many different kinds of corporations have, in many instances, more than one statute under which to organize.   p. 8.

7.   EMINENT DOMAIN.—*Street and Interurban Railroads.—Incorporation.*—A corporation organized under the voluntary associations act of 1903 (Acts 1903 p. 180) for promoting, constructing, equipping and operating street and interurban railroads, has the right of eminent domain (Acts 1901 p. 461, §5468a *et seq.* Burns 1901).   p. 9.

8.   RAILROADS.—*Street and Interurban.—Duties and Penalties.—Charters.—Statutes.*—A corporation formed under the voluntary associations act of 1903 (Acts 1903 p. 180) for promoting, constructing, equipping and operating street and interurban railroads, comes within the terms of §5675 Burns 1908, Acts 1903 p. 92, defining the powers of street and interurban railroad companies, and such corporation becomes subject to the duties and penalties prescribed by the street and interurban railroad statutes.   p. 10.

From Superior Court of Vanderburgh County; *Alexander Gilchrist,* Judge.

Action by the Evansville Terminal Railway against the F. W. Cook Investment Company. From a judgment for plaintiff, defendant appeals. *Affirmed.*

*George A. Cunningham,* for appellant.

*Funkhouser & Funkhouser* and *Robinson & Stilwell,* for appellee.

HADLEY, J.—Action by appellee to condemn real estate for use in constructing its street and interurban railroad. Appellee was duly organized under the voluntary associations act of March 9, 1901 (Acts 1901 p. 289), and the amendment or supplement thereto, approved March 7, 1903 (Acts 1903 p. 180).

The single question involved in this appeal is this: Is appellee a corporation authorized by law to exercise the right of eminent domain?

The first section of said act of March 9, 1901 (§4286 Burns 1908), which the act of 1903, *supra,* amends, provides that " any number of persons, not less than three, may voluntarily associate themselves by written articles of association, signed and acknowledged by each person who may be a member at the time of organization, specifying," etc., and stating what the articles of association shall contain. The second section of said act (§4287 Burns 1908) provides " that such associations may be formed for one only of the following purposes." This is followed by a list of more than thirty purposes for which such association may be formed. The twenty-eighth section (§4319 Burns 1908) provides that from the time the certificate is issued by the Secretary of State, and the articles recorded in the recorder's office, such association " shall be deemed and held to be a corporation, and shall have and possess all the rights, powers and privileges given to corporations by common law," etc.

Prior to 1901 there had been many acts, original and amendatory, regulating the organization of voluntary asso-

ciations, and it is clear that in framing the act of 1901, *supra,* the legislature intended to revise, consolidate, abridge and perfect the legislation on that subject. By said act of 1901, as many as twelve distinct previous acts on the subject, and all other laws inconsistent therewith, were specially repealed. But it is just as plain that the next legislature attempted, and intended, to extend the privileges of the voluntary associations act to other and additional industries and activities. The title and first section of the act of 1903, *supra,* are as follows:

" An act authorizing the formation of corporations under the provisions of 'An act concerning the organization and perpetuity of voluntary associations, repealing all laws in conflict therewith, legalizing the organization of certain associations organized under former laws, and declaring an emergency,' approved March 9, 1901, for certain purposes not therein named, and declaring an emergency.

" Section 1. Be it enacted by the General Assembly of the State of Indiana, that any number of persons, not less than three, may voluntarily associate themselves into a corporation in the manner set forth in an act entitled: ' An act concerning the organization and perpetuity of voluntary associations, repealing all laws in conflict therewith, legalizing the organization of certain associations organized under former laws, and declaring an emergency,' approved March 9, 1901, with all the rights and privileges granted by said act, and subject to all the provisions thereof, to promote, finance, construct, equip, rent and operate, in the State of Indiana or elsewhere, street and interurban railroads, and plants for the creation and distribution of electric and other heat, light and power, and in connection therewith to *take, own, hold, negotiate,* sell or otherwise dispose of and deal in stocks and securities of other companies, and *to do all other things* needful or connected therewith." (Our italics.)

We are advised by said title that the purpose of the act was to authorize the formation of corporations, under the act of 1901, " for certain purposes not named " in the latter act. In the body of the act it is made clear that among the certain purposes not named in

the former act, and to which the supplemental act relates, is one to authorize the formation of corporations "to promote, finance, construct, equip, rent and operate, in the State of Indiana or elsewhere, street and interurban railroads * * * and to do all other things needful or connected therewith."

Neither the act of 1901, nor that of 1903, confers any right upon any corporation organized thereunder to condemn real estate, and if such power exists it must be found in some other statute, for it cannot be implied. *Consumers Gas Trust Co.* v. *Harless* (1892), 131 Ind. 446, 15 L. R. A. 505; 2. Elliott, Railroads (2d ed.) §957.

When the persons organizing appellee company had complied with the provisions of said statutes, the association which they had formed became, by the express terms of the statute, a corporation, and having decided to engage in the promotion, construction, equipment and operation of a street and interurban railroad, by the express provisions of the act of 1903, *supra,* the corporation became a street and interurban railroad corporation. Because appellee announces in its articles of association its further purpose "to promote plants for the creation and distribution of electric and other heat, light and power," will make no difference. If it engages in the latter—that is, if it pursues the business of creating and distributing light and heat —it will also be a "light and heat" company.

It is held in the case of *County of Randolph* v. *Post* (1876), 93 U. S. 502, 23 L. Ed. 957, that a corporation with authority to "construct, complete and operate a railroad" is not the less a railroad company because it is also a coal, or a mining, or a furnace, or a manufacturing company. *Seymour* v. *City of Tacoma* (1893), 6 Wash. 147, 32 Pac. 1077.

As before stated, a corporation formed under the voluntary associations act derives no authority from that act to condemn

8      SUPREME COURT OF INDIANA,

F. W. Cook Investment Co. *v.* Evansville, etc., Railway—175 Ind. 3.

real estate for railroad or any other purpose, and no such right exists without express statutory authority.

Neither did the act of 1861 (Acts 1861 [s. s.] p. 75) authorizing the organization of street railroads, nor did any of its many subsequent amendments convey any such right. §5630 *et seq.* Burns 1908. So we must, of necessity, look to some other statute, or deny the right altogether.

It is well to note that in considering the right to exercise the power of eminent domain, the charter, or statute under which it was granted, or the character of the corporation—whether private, or *quasi*-public—is not important. The prime and exclusive test may be said to be: Is the proposed use a public one? If the use is calculated to promote the public welfare, the law will not stop to inquire whether the applicant is organized under this or that statute authorizing such organization. The legislature has been generous, if not wise, in providing for those desiring to form a corporation for the transaction of almost any kind of business a choice of statutes under which to organize.

For instance: Corporations to buy and sell merchandise; to carry on a transit and transfer business; to buy and sell real estate; to construct buildings; to create and furnish light, heat and power; to sink and operate oil and gas wells—and doubtless many others, may be organized under either the manufacturing and mining laws (§5062 *et seq.* Burns 1908), or the voluntary associations act (§4286 *et seq.* Burns 1908, Acts 1901 p. 289).

Corporations may also be formed for the maintenance of cemeteries, under the act of 1879 (Acts 1879 [s. s.] p. 84, §4433 Burns 1908), or under the voluntary associations act (§4291, *supra*). No general power to exercise the right of eminent domain is given by any provision of the manufacturing and mining act. Companies organized thereunder to do a business of a *quasi*-public character, such as water-works, distribution of oil, gas, heat, light, power, etc., are given the right to condemn by special provision.

It is the business, and not the statute of organization, that determines the right to eminent domain.

Street and interurban railroad companies have the right to condemn, and the language of the statute conferring the right is significant. Acts 1901 p. 461, §5468a *et seq.* 7. Burns 1901. Since 1861 (Acts 1861 [s. s.] p. 75) there had been upon the statute books an elaborate statute for the organization of street railroad companies, but the companies that might have the superior right were not confined to those organized under the street railroad law of 1861. The language of the new act of 1901 (§5468a, *supra*) is in these words: " That any street railroad company heretofore or hereafter organized under the laws of the State of Indiana," and desiring to construct or acquire any street railroad, or interurban street railroad, may condemn real estate.

The legislative sense is made even plainer in other acts relating to the same subject. In conferring the power upon oil companies, the language of the act is "that all companies, corporations and voluntary associations now organized under the laws of the State of Indiana, or which may hereafter be organized thereunder," shall have the right, etc. §5159 Burns 1908, Acts 1897 p. 263, §1.

With respect to gas companies enjoying the right, the act of 1907 (Acts 1907 p. 340, §5144 Burns 1908), clearly recognizing that such a corporation may exist under more than one law, disposes of the subject thus: " That whenever any corporation or voluntary association, organized under the laws of the State of Indiana, or which may hereafter be incorporated thereunder for the purpose of manufacturing " and distributing gas, etc., desires to exercise the right of eminent domain, it may do so under the act of 1889 (Acts 1889 p. 22).

It, therefore, seems only material that an applicant for the right under discussion shall be able to show that it is a duly organized corporation, authorized by some law of Indiana to exist, and to do the things declared in its articles.

We have heretofore seen that appellee, being duly organized as a corporation, under the voluntary associations act of 1901 (Acts 1901 p. 289), as supplemented by the act 8. of 1903 (Acts 1903 p. 180), is, by the express terms of the statute, a corporation, and being organized " to promote, construct and operate " a street and interurban railroad is, therefore, a street and interurban railroad company, and within the terms of §5675 Burns 1908, Acts 1903 p. 92.

" Railroad companies are companies or associations organized for the purpose of constructing, maintaining and operating railroads." 1 Elliott, Railroads §1.

But while there seems no doubt of appellee's right to seek the voluntary associations act of 1903 for organization purposes, it is very clear that having adopted as its business and purpose of organization the promotion, construction, equipment and operation of a street and interurban railroad—a business specially regulated by another and different statute— it thereby assumes, and subjects itself to, all the additional duties and responsibilities imposed by the street and interurban statutes as fully and in all respects as if its organization had been under the latter statutes. Such an organization can find no refuge in the voluntary associations act from a burden, or delinquency, under the street and interurban acts.

Judgment affirmed.

Jordan, J., dissents.