ATLANTIC CITY v. WARREN BROS. CO. et al.

(Circuit Court of Appeals, Third Circuit. July 16, 1915.)

No. 1949.

1. APPEAL AND ERROR &⊶991—QUESTIONS OF FACT—JURISDICTIONAL QUESTIONS.

When the jurisdiction of the court depends on questions of fact, which are submitted to the jury under proper instructions, their determination is conclusive and cannot be reviewed by an appellate court.

[Ed. Note.—For other cases, see Appeal and Error; Cent. Dig. §§ 3896–3899, 3912, 3913; Dec. Dig. &⊶991.]

2. PARTIES &⊶51—SPLITTING CAUSE OF ACTION—AMENDMENT BRINGING IN NEW PARTIES.

A contract with a New Jersey city for the construction and laying of a water main several miles long fixed the price per foot and also provided for extra work which might be necessary. Before the work was finished, the contractors assigned their claims for extra work. The work was completed and accepted, the estimates for both classes approved and

&⊶For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

that for the original work paid, but the city refused to pay the claim for extra work and the assignee brought suit thereon. The city set up that on a remeasurement there was still a balance due the contractors for the original work, and that the suit was therefore on a split cause of action and could not be maintained. The statutes of New Jersey, P. L. 1890, p. 38, and P. L. 1903, p. 537, as construed by the courts, permit an assignee of an entire claim arising on contract to sue thereon in his own name, but not an assignee of part of a claim. P. L. 1912, p. 377, provides that "if a part interest in a contract obligation be assigned the assignor (retaining the remaining interest) and the assignee may be joined as parties." Held, that the court correctly permitted the contractors to be joined as plaintiffs, and that with such amendment the action was maintainable.

[Ed. Note.—For other cases, see Parties, Cent. Dig. §§ 77–82; Dec. Dig. ⬡⟹51.]

3. MUNICIPAL CORPORATIONS ⬡⟹360—CONTRACT FOR LAYING WATER MAIN—CONSTRUCTION—EXTRA WORK.

A contract with a city for the construction and laying of a wooden water main, several miles long, fixed the price per foot, and also provided for such extra work in laying as might be found necessary, but that "no claim for extra work shall be allowed unless previously ordered by the engineer in writing." All extra work done was ordered by the engineer either in writing or orally, with the approval of the city board of water commissioners, before it was commenced, and when ordered orally written orders were given before claims therefor were presented and allowed. Held, that such practice was in compliance with the provision of the contract which, considering the unknown character of the ground, could not be construed to require written orders in advance of the work in all cases, but only before claims therefor were allowed; its purpose being to protect the city against claims for unauthorized work.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 892, 892½; Dec. Dig. ⬡⟹360.]

4. MUNICIPAL CORPORATIONS ⬡⟹365—CONTRACTS—WAIVER OF PROVISIONS.

Such contract contained a further provision that "the claims for such extra work shall be presented on or before the 15th of the month following its execution; otherwise such claims for extras during that month shall be forfeited." The contract was executed by the board of water commissioners of the city which was authorized by statute to make such contracts when money for the improvement had been appropriated by the common council, as had been done in this case. After the work had been begun, it was found that some of the extra work required, as the construction of supports for the pipe through a marsh, not contemplated by the contract, would necessarily be continuous for a considerable time, making it impracticable, if not impossible, to make monthly estimates, and the engineer under authority from the board, wrote a letter to the contractors waiving such requirement for monthly settlements and no claim for extra work was presented until the work was completed and accepted. Held, that the waiver, having been executed in good faith and for adequate reasons, was binding on the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 898; Dec. Dig. ⬡⟹365.]

5. MUNICIPAL CORPORATIONS ⬡⟹252—CONTRACTS—MODIFICATION.

A municipal corporation having the power to make a contract may deal with the contract in the same manner as if it were a natural person, and may, in the absence of statutory limitation, modify or cancel it in the same manner as it might originally contract; and in general its power to modify a public improvement contract is vested in the same officer or body authorized to make the contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. §§ 692–694; Dec. Dig. ⬡⟹252.]

⬡⟹For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

6. DAMAGES ⬥85—LIQUIDATED DAMAGES—PUBLIC IMPROVEMENT CONTRACT.

In an action against a city to recover a balance due on a contract for a public improvement which provided that the contractors should pay a stipulated sum per day as liquidated damages for delay in completion beyond a fixed date, it was not error to refuse an instruction that the city was entitled as matter of law to a set-off, because of the failure to complete the work by such date, where there was evidence that the delay was caused by the city and was not due to any default of the contractors.

[Ed. Note.—For other cases, see Damages, Cent. Dig. §§ 179–181, 183–187; Dec. Dig. ⬥85.]

7. MUNICIPAL CORPORATIONS ⬥352—CONTRACT FOR WATER MAIN—CONSTRUCTION OF PROVISIONS.

A contract with a city for the construction of a water main, which must necessarily cross the lines of several railroads, provided that the contractors should co-operate with the railroad companies in order that the main should cross their rights of way without injury to their property, but that permission to make such crossings should be obtained by the city. To secure such right from one company, the city paid it a sum estimated to be necessary to construct a culvert to protect its roadbed, and the company employed and paid the contractors for the water main for constructing the culvert. *Held*, that the contract did not require the contractors to credit the amount so paid the railroad company as a payment on their contract with the city.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 883; Dec. Dig. ⬥352.]

8. MUNICIPAL CORPORATIONS ⬥353—ASSIGNMENT—MONEY DUE ON CONTRACT—CLAIM FOR "EXTRA WORK."

A contract with a city for construction of a water main required the contractors to furnish both labor and materials, and also provided for payment for "extra work" which might be agreed upon. The contractors assigned their claim against the city for all extra work done under the contract. *Held*, that the phrase "extra work," as used in both the contract and assignment, included the materials as well as the labor furnished therefor.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 885; Dec. Dig. ⬥353.

For other definitions, see Words and Phrases, First and Second Series, Extra Work.]

9. MUNICIPAL CORPORATIONS ⬥353—ASSIGNMENT—MONEY DUE ON CONTRACT—VALIDITY.

A provision in a contract with a city for construction of a water main, that the contractors should not assign, transfer or sublet "any part of the work herein specified" without the consent of the city, does not invalidate an assignment by the contractors of their claim against the city for work done by them under the contract.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 885; Dec. Dig. ⬥353.]

10. MUNICIPAL CORPORATIONS ⬥1021, 1022—ACTIONS AGAINST—CONDITIONS PRECEDENT—PRESENTATION OF CLAIM.

P. L. N. J. 1904, p. 259, relating to cities, provides that "no warrant for the payment of money shall be delivered by any officer * * * until the bill or claim intended to be paid thereby shall have been presented to the mayor for his approval." *Held*, that the object of such provision is to protect the city against improper expenditures by its officers or boards by requiring the mayor's approval before money is disbursed, and that

⬥For other cases see same topic & KEY-NUMBER in all Key-Numbered Digests & Indexes

where a claim is refused payment by such officer or board the claimant is not required to present it to the mayor before bringing suit thereon.

[Ed. Note.—For other cases, see Municipal Corporations, Cent. Dig. § 2193; Dec. Dig. ☞1021, 1022.]

In Error to the District Court of the United States for the District of New Jersey; John Rellstab, Judge.

Action at law by the Warren Brothers Company, William I. Cherry, and Frank S. Lockwood against Atlantic City, New Jersey. Judgment for plaintiffs, and defendant brings error. Affirmed.

C. L. Cole, of Atlantic City, N. J., for plaintiff in error.

Frank S. Katzenbach, Jr., of Trenton, N. J., for defendants in error.

Before BUFFINGTON, McPHERSON, and WOOLLEY, Circuit Judges.

WOOLLEY, Circuit Judge. This action was instituted by Warren Brothers Company, a corporation of the State of West Virginia, against Atlantic City, a municipal corporation under the law of the State of New Jersey, being chapter 107 of the Laws of 1902, p. 284, relating to and regulating the government of cities. The plaintiff declared upon an assignment of claims for extra work done under a contract purporting to have been made between one Frank S. Lockwood and Atlantic City, and sought to recover thereupon the sum of $60,583.19, with interest from October 17, 1911. During the progress of the trial, Frank S. Lockwood and William I. Cherry, who held the remaining unassigned rights under the contract, were, by amendment, made parties plaintiff, and upon verdict judgment was entered for the plaintiffs, Frank S. Lockwood and William I. Cherry for $3,142.38 and for Warren Brothers Company for $69,734.45, with costs.

The trial of this cause embraced so many issues, and the numerous errors assigned are so inter-related, that the case and the theory upon which it was tried, can be developed only by an orderly consideration of the questions submitted for review.

On November 3, 1909, Atlantic City, acting through its Board of Water Commissioners, entered into a contract with one Frank S. Lockwood, in which Lockwood undertook to build a forty-eight inch wooden stave pipe line from the city's water works at Absecon to Atlantic City, of an approximate length of 25,000 lineal feet, and Atlantic City engaged to pay therefor the sum of $224,981.47, the said sum to be proportionately increased or decreased as the line, when completed, was greater or less than the length designated. The contract was in writing and contained many provisions. Upon these provisions as construed, and upon the conduct of the parties thereunder, depends the right of recovery.

The first question raised was the jurisdiction of the trial court, which involved (a) the question, under the Federal law, of the diverse citizenship of the parties; and (b) the right of Warren Brothers Company under the law of the State of New Jersey, to sue alone upon the assignment.

[1] (a) Acting under authority of the statute which created the Board of Water Commissioners of Atlantic City and conferred upon it the power to maintain, extend and improve the water works of the city, and in pursuance of resolutions of the Common Council of Atlantic City, appropriating the sum of $300,000 for that special purpose, the Board of Water Commissioners entered into the contract with Frank S. Lockwood for the construction of a water main of the type indicated.

One Louis Kuehnle was the president of the Board of Water Commissioners. He was also a stockholder and a director of the United Paving Company, a corporation engaged in the business of constructing municipal works. Frank S. Lockwood was an employee and superintendent of the United Paving Company. The contract was awarded by the Board of Water Commissioners, of which Kuehnle was a member, to Lockwood, an employee of the Paving Company of which Kuehnle was a stockholder and director. Being without means to prosecute the work, Lockwood at once applied to one William I. Cherry for financial assistance. Cherry was the president of the Paving Company. Cherry agreed to supply Lockwood with money, and as security took an assignment of $99/100$ interest in the contract, Lockwood retaining $1/100$ interest therein. The work was started by Lockwood and was completed by him with the tools and implements of the Paving Company and with money supplied by Cherry. The money that Cherry advanced was withdrawn from the treasury of the Paving Company, it is alleged, without the knowledge of its directors and stockholders, and amounted in the whole to about $60,000.

In order to obtain funds with which to reimburse the Paving Company, Cherry made application to Warren Brothers Company (the original plaintiff in this suit) for a loan of $60,000. He offered as security an assignment of the money due under the contract for extra work which was about completed, claims for which about equaled the amount he desired to borrow. Warren Brothers Company preferred to deal with the Paving Company, and offered to advance the money if the application for the loan came from that company. Thereupon, an assignment of the claims for extra work under the contract was made by Cherry and Lockwood to the Paving Company, which in turn assigned the same to Warren Brothers Company, the consideration paid by the latter being approximately the sum of $60,000, an amount sufficient to enable Cherry to replace the funds withdrawn by him from the Paving Company. The assigned claims were presented to the city and payment refused, whereupon this suit was brought.

The learned trial judge charged the jury that primarily the right of Warren Brothers Company to recover in this action for money due for extra work done under the contract, depended upon the right of Lockwood to recover, had he not assigned the claims and had he brought suit in his own right, and that the right of Lockwood to recover depended upon whether Lockwood was the real contractor with the city, or whether in fact, although not in form, the contract was really between the city and the United Paving Company.

The question who was the real contractor was, therefore, a question

of fact to be determined by the jury. The question embraced more than the legality of the conduct of Kuehnle, a director of the Board of Water Commissioners, in awarding a contract to a corporation in which he was financially interested. It involved the citizenship of the parties, and upon the diverse character of their citizenship, when ascertained, depended the jurisdiction of the District Court under the Federal law.

Warren Brothers Company was a corporation of the State of West Virginia. It was testified that Lockwood was a citizen of the State of North Carolina and Cherry a citizen of the State of New York. The United Paving Company and Atlantic City were corporations of the State of New Jersey. Of these facts, some were admitted, others controverted.

The learned trial judge submitted to the jury in limine, the questions, first, whether Lockwood and Cherry were citizens respectively of the States of North Carolina and New York, or of the State of New Jersey, and second, whether the contract in suit was in fact made with Lockwood, or, though in form with Lockwood, was in truth made with the United Paving Company, and instructed the jury that if it found that the Paving Company, a New Jersey corporation, was the real contractor, it could not have brought this suit in the District Court against Atlantic City, likewise a New Jersey corporation, and that as the rights of Warren Brothers Company were no greater than those of the Paving Company, Warren Brothers Company could not maintain this action, and accordingly the verdict should be for the defendant.

The jury rendered a verdict for the plaintiffs. A verdict for the plaintiffs upon the preliminary issues submitted, embraced several findings of fact, and determined that the contract was made in good faith, that it was made between the city and Lockwood and not between the city and the United Paving Company, and that it was made between citizens of different states, thereby satisfying the requirement of the Federal statute conferring jurisdiction upon the District Court to entertain the action.

As the jury, by its verdict, decided that the contract was not made by the Board of Water Commissioners with the United Paving Company, in both of which bodies Kuehnle was a director, we are not concerned with those things which may be suggested or imputed by the character and circumstances of the transaction. With them, this court has nothing to do.

[2] (b) Having submitted to the jury the issue of fact, upon which, by its verdict, the jurisdiction of the District Court, under the Federal law, was established, the next question was whether the District Court, under the law of the State of New Jersey, could entertain jurisdiction of a cause of action based upon an assignment of the character declared upon.

The work undertaken was a venture in a new field of water works' construction. It included the building of a wooden tube or flume of large diameter, laid for a considerable distance in a marsh, carried under three waterways, or small rivers, and constructed under the

roadbeds of several railroad and traction companies. Both parties recognized that the undertaking involved problems which could not be anticipated, and provided for extra labor to be done and extra materials to be furnished pursuant to orders given in a manner prescribed by the contract. The contract, therefore, contemplated principal work and extra work, and payment for both. Lockwood having assigned to Cherry $99/100$ of his interest in both classes of work, the two assigned, through the Paving Company, to Warren Brothers Company, their interest in the claims for the extra work, but not for the principal work.

Upon the acceptance by the engineer of the work of both kinds, the Board of Water Commissioners approved the claim of Lockwood and Cherry for the principal work under the contract, and in due course they were paid all that was supposed by them to be due them. The claims for extra work assigned to Warren Brothers Company were likewise approved by the Board of Water Commissioners and were presented to the Comptroller for payment. The Comptroller, however, refused payment, and subsequently the Board rescinded its approval, whereupon Warren Brothers Company instituted this suit.

Postponing for the present a consideration of the legality of the assignment, we will inquire of the right of Warren Brothers Company to maintain an action for the recovery of money due upon an assignment of claims for a part only of the work contemplated by the contract. The city charged that under the law of New Jersey, Warren Brothers Company has a right to sue as an assignee and to sue alone only upon an assignment which embodies all claims under the contract; that Warren Brothers Company is pressing for recovery on a split assignment, recovery upon which would leave the city open to attack by Lockwood and Cherry for claims due them for principal work under the contract. In support of its contention that it might thus be required to defend two suits, the city produced an estimate of the work done and monies due and in part paid upon the main contract, which showed that there still remained due Lockwood and Cherry for principal work, the sum of $1,346.66. This evidently was a surprise to Lockwood and Cherry, who had testified that so far as they knew they had been paid in full. It was subsequently disclosed that Lockwood and Cherry had accepted payment upon an estimate based upon the contract length of the line of 25,000 feet, while the estimate produced was made by the engineer and was based upon a precise measurement of 25,502.25 feet, the increase in length entitling Lockwood and Cherry to a proportionate increase in payment. As this estimate disclosed that money was still due Lockwood and Cherry, and likewise disclosed that Warren Brothers Company was in fact suing upon a split assignment, that is, it was suing for but a part of what was due under the contract, Warren Brothers Company, therefore, was confronted with the statute of New Jersey of 1890 (P. L. 24) and the statute of 1903 revising the Practice Act (P. L. 537), which provided that choses in action arising on contracts are assignable and the assignee may sue thereon in his own name, but as construed, did not extend the right to an assignee to sue in his own name and

recover on a partial assignment of a chose in action. Otis v. Adams, 56 N. J. Law, 38, 27 Atl. 1092; Sternberg v. Lehigh Valley R. R. Co., 78 N. J. Law, 277, 73 Atl. 39.

A supplement to the practice act of 1903 was enacted in 1912 (P. L. c. 231), under which certain rules were promulgated, the ninth of which is as follows:

"If a part interest in a contract obligation be assigned, the assignor (retaining the remaining interest) and the assignee may be joined as parties."

From these statutes and this rule it has been considered, that since 1890 an assignee of the whole of a contract obligation had a right to sue in his own name, and since 1912, an assignee of an interest in such an obligation and an assignor (retaining the remaining interest) may be joined as parties. Being confronted with the contention that under the law the parties *must* be joined, and it being plain that they *may* be joined, the plaintiff moved to amend by making Lockwood and Cherry parties plaintiff. The motion to amend was allowed, Lockwood and Cherry were made parties plaintiff, and the trial proceeded. Immediately upon the joinder of Lockwood and Cherry, there arose a controversy whether the balance due them was $1,346.66, as disclosed by the city, or was $2,651.88, which with interest amounted to $3,142.38, as disclosed by the engineer's calculations. This was an issue of fact. It was submitted, and, in view of the manner in which it was raised, we think it was properly submitted, to the jury, and by the jury's verdict it was determined.

Assuming, as we do, that the District Court was within the practice and the law in permitting an amendment of parties pending trial, the question of suit by Warren Brothers Company on a split assignment was solved, and any fault of Warren Brothers Company in suing alone for extra work was cured by the joinder of the parties who were entitled to any and all balances remaining due under the contract. We are of opinion that the District Court, under the law of New Jersey, had jurisdiction of the cause of action.

The remaining matters for review relate to errors alleged to have been committed by the court in the conduct of the trial, in the consideration of which we have endeavored to embrace by classification all of the specifications of error that require discussion.

[3] 1. The provisions of the contract with respect to extra work are two. The first is, that "no claim for extra work shall be allowed unless previously ordered by the engineer in writing." At the trial, the city contended that this provision means that an order in writing must be given by the engineer before the extra work is begun. What was actually done was this: In some instances, the engineer gave written orders for extra work before the work was begun, but perhaps in most instances, extra work was begun on oral orders, and after it was either begun or completed, written orders were given. In each instance where extra work was done, the orders, either oral or written, were issued by the engineer after the matter had been considered and approved by the Board of Water Commissioners. In every instance, written orders were issued before claims therefor were allowed and presented for payment.

The learned trial judge did not adopt the construction urged by the city, which in effect prohibited an allowance of a claim for extra work, unless the work was preceded by a written order. He sought the meaning of the provision in the understanding of the parties with respect to the character of the work undertaken, the practical difficulties contemplated and encountered, and the necessity which developed after the work was begun of conducting certain extra work in conjunction with the principal work, and prosecuting the two together, thereby making written orders prescribing the precise nature and extent of such extra work impracticable, if not impossible. He held that the purpose of the provision was to protect the city in making payment only for extra work authorized to be done, and that as in every instance of extra work there was a written order given by the engineer previous to the presentation and allowance of a claim for payment, the provision had been complied with.

With this construction of the provision, our views accord. If the construction of the provision is to be restricted to its language, it is concededly open to two constructions, and these depend entirely upon the manner in which the phrases are read and transposed. If the words "unless previously ordered" refer to the words "extra work" as an antecedent, then the provision means that unless the extra work before it is begun is previously ordered by the engineer in writing, no claim shall be allowed, and the contention of the city is correct; but if the clause "unless previously ordered" modifies the verb "allowed," then the meaning is that before the claim is allowed or payment made, a written order must previously have been made. In other words, by one construction, the written order must precede the work. By the other, the written order must precede the allowance of the claim. The provision whichever way construed, has for its object to protect the city from making payment for unauthorized work. Conduct which completely affords this protection is within the meaning of the provision. This protection to the city was afforded by every item of extra work being authorized by the engineer either verbally or in writing, and approved by the Board of Water Commissioners before it was begun, and written orders for the same being given before the claims were presented or allowed. We find no error in the trial court's construction of this provision of the contract. Riverside T. P. v. Stewart, 211 Fed. 873, 877, 128 C. C. A. 251.

[4] The second provision with respect to extra work is as follows:

"The claims for such extra work shall be presented on or before the 15th of the month following its execution; otherwise, such claims for extras during that month shall be forfeited."

With respect to this provision of the contract, the learned trial judge said:

"Literally taken, this would call for a forfeiture in every instance where any work was done even upon the previous written order of the engineer, if the contractor failed to present a bill before the middle of the month following the execution of the work. This provision of course is inserted for the protection of the city authorities. It may be waived by them, and in this suit we have evidence of a formal written waiver of this provision. Now if that waiver was executed in good faith it was binding upon the defendant. If not,

and the presentation of the bills was purposely withheld pursuant to an understanding with the Board, whatever may have been the motive or intent of the parties, all of such bills are forfeited, and the defendant, being the principal party who made such a waiver, may enforce such forfeiture and use it as a defense in this action."

The evidence alluded to by the judge was a letter addressed to Lockwood, the contractor, by Van Gilden, the engineer, approved by two of the Board of Water Commissioners, expressly waiving the requirement for presenting claims for extra work on or before the fifteenth day of the month following its execution. The questions raised were three. The first was the good faith of the Board in waiving the provision and of the contractor in postponing presentation of claims. This question was one of fact, and being determined by the jury, we have nothing to do with it. The second was, whether the waiver was a formal act of the Board; and the third was, if so, whether the Board had the legal power to waive an express provision of the contract.

With respect to the formality of the waiver, there was evidence that the minutes disclosed no record of the Board's action in this respect. This alone would not be sufficient to dispose of the waiver as a legal act. The rights of a third person dealing in good faith with a department or an agency of a municipality cannot be prejudiced by omission of that body to duly record its corporate action. Riverside T. P. v. Stewart, 211 Fed. 873, 876, 128 C. C. A. 251, and cases cited. Without discussing the testimony, we are satisfied that it is sufficiently disclosed that the waiver, as presented, was the formal act of the Board. The jury has decided it was a bona fide act. The question that remains is, whether it was a legal act.

The city contends that the Board of Water Commissioners, though possessing power to make a contract for Atlantic City, is without power to waive any of its provisions, that such a power, if it exists at all, rests with the Common Council of the city, upon the theory that the Board is a special municipal agency, of which the Common Council is the principal. We are rather inclined to the view that the city is the principal, and that both the Board of Water Commissioners and the Common Council are its governmental agencies, with legal capacity to act for and bind the city with respect to the matters and to the extent prescribed by the law creating them. The law that established the Board of Water Commissioners, defined its powers, and prescribed its duties, provides, in substance, for the appropriation by the Common Council of sums of money to be expended by the Board of Water Commissioners, in the purchase of implements, machinery and plants for the maintenance, extension and improvement of a water works' system, conferring upon the Board, by necessary implication, the power to make contracts for the same. Act of New Jersey 1902, c. 107, §§ 58, 59, 60. The law does not specifically authorize the Board to waive provisions of contracts which it authorizes it to make. Neither does the law confer authority upon the Common Council to contract with respect to the maintenance, extension and improvement of the water works' system, or to alter or waive the provisions of any contract made in respect thereto. It would seem, therefore, that if the legal right of the city to waive a provision of a contract made by

its Board of Water Commissioners reposes anywhere, it is not to be found, as contended by the defendant, within the powers of the Common Council, whose primary function in connection with the water works is to raise and appropriate monies. If the provision of the contract can be waived at all, it can be waived by the Board of Water Commissioners. May not such a provision be waived?

[5] It is a general principle of municipal law that a municipal corporation having the power to make a contract can deal with the contract in the same manner as if it were a natural person; and may, in the absence of statutory limitation, change or modify it or cancel it in the same manner as it might originally contract, if modified by the officers of the municipality having authority to act in that respect. Dillon, Municipal Corporations (5th Ed.) vol. 2, p. 1235.

As a broad proposition, the power of a municipality to modify a public improvement contract is lodged in the principal or officer authorized to make the contract. McQuillin, Municipal Corporations, vol. 4, p. 4136. Such modifications, it is safe to assume, may be lawfully made when required by an exigency to meet a situation in the nature and progress of the work, that was neither understood nor contemplated when the contract was made. In the case of Randolph v. Post, 93 U. S. 502, 23 L. Ed. 957, Mr. Justice Hunt said:

"We should unreasonably restrict the rights and powers of a municipal corporation were we to hold that it did not possess the power to alter its legally made contract by waiving conditions found to be injurious to its interests, or that it could not estop itself, like other parties to a contract." Riverside T. P. v. Stewart, 211 Fed. 873, 877, 128 C. C. A. 251; Abells v. City of Syracuse, 7 App. Div. 501, 40 N. Y. Supp. 233; Shea v. Milford, 145 Mass. 528, 14 N. E. 764; Meech v. Buffalo, 29 N. Y. 198.

It was testified that shortly after work was begun, it was discovered that much extra work would be required. It was found that extra work would be required for foundations to support the pipe in the marsh, when none was contemplated by the contract. The foundation for the pipe through the marsh was required to be laid contemporaneously with the pipe as one continuing transaction, material being purchased at one time, piled, used, and with labor installed at other times, making the presentation of claims on the 15th of the month following the extra work a difficult and impracticable, and almost an impossible transaction. Therefore, as it is explained, that "to expedite the performance of the work incidental to this contract," the waiver was executed. The letter of the Board of Water Commissioners, waiving the fifteenth day clause, was written before any extra work had been done or any claim for extra work approved in favor of the contractor against the city. The waiver, therefore, did not validate any pre-existing claims. Relying upon the waiver of the fifteenth day clause, claims for extra work were not presented until the work was completed and had been inspected, approved and accepted by the engineer.

We are of opinion that the learned trial judge committed no error, first, in submitting to the jury the question of the good faith of the waiver, and second, in instructing the jury, if it found the waiver

was executed in good faith, that the Board of Water Commissioners had legal power to waive the provision.

[6] 2. The contract provided for the completion of the work on or before March 1, 1910, and stipulated liquidated damages in the sum of $25, for each day's delay. The work was completed on July 11, 1911. At the meeting of the Board at which the work was accepted, a resolution was passed waiving the penalty clause for non-completion within the time limited. At the trial, the city claimed a set-off of $25 per day from March 1, 1910, to July 11, 1911, against the demands of the plaintiffs, and assigned as error the refusal of the court to charge,

(a) That the defendant must be allowed as an off-set $25 per day for each day the work remained uncompleted from March 1, 1910, to July 11, 1911;

(b) That there is no evidence in the case which justifies the jury in finding that the defendant was responsible for any of the delay;

(c) That the Board was without authority to waive the penalty clause.

The cause of the delay in completing the work was one of the controverted issues of the case. The city charged the delay to the contractor, and sought liquidated damages, and the contractor charged the delay to the city, and proved, among other things, that permission to cross the right of way of a certain railroad company, which, under the contract, the city assumed to obtain, was not secured until long after the date upon which, by the terms of the contract, the work was to have been completed. In this state of the testimony, we find no error in the conduct of the learned trial judge in refusing to instruct the jury, as a matter of law, to allow the city liquidated damages of $25 per day from March 1, 1910, to July 11, 1911, or that there was no evidence of delay on the part of the city.

The remaining error imputed to the trial judge with respect to the penalty, was his refusal to charge "that the Board of Water Commissioners were without authority to waive the penalty clause." Although upon this point, considerable stress was laid, we feel, that in the light of the charge, the matter requires neither discussion nor decision. The trial judge did not pass upon the authority of the Board to waive the penalty clause, but treated the subject as though no resolution waiving that clause had ever been passed by the Board. In fact, he did all that the defendant of right could ask, that is, he submitted to the jury, under the penalty clause, the issue whether there was delay and who was responsible for it, with a direction for an appropriate finding for the city if the delay was found to have been caused by the contractor.

Treating the subject as if the city had not waived the penalty, the learned trial judge said:

"Now, inasmuch as the engineer of the defendant has said that during the progress of the work, changes in the construction of the work were made necessary and that some delay was experienced in constructing the pipe line across the rights of way of third parties, it is evident that in some respects, to some extent at least, the delay cannot be charged to the plaintiff. You have heard the testimony in that relation, and it is a question for you to determine

whether such changes and delays for which the contractor is not responsible, are in themselves responsible causes for the failure to complete the contract in time, either in whole or in part. If you find that such causes are responsible for the entire delay, of course no such per diem amount can be allowed against the plaintiffs or any of them. *If, however, you find that in some respects the contractor is responsible for delays, then you will charge against the plaintiffs such sum as shall be the aggregate of $25 per day for all such days.*"

In the closing instructions to the jury, he said:

"If you find an amount in favor of the defendant, you will state what amount and the ground therefor, as, for instance, the penalty at $25 per day for the undue delay in completing the work."

We are of opinion that the instructions to the jury with respect to the liquidated damage clause of the contract, were without error.

The whole question of delays and damages was submitted to the jury, as though no waiver thereof had ever been made, and the jury, by its verdict, made a decision which cannot be reviewed.

[7] 3. The course of the pipe line crossed the rights of way of several railroad companies. With this knowledge, the parties to the contract stipulated that:

"It shall be the duty of the contractor to co-operate with the proper authorities of the Reading road, the Shore Fast Line and the Suburban Traction Company, in order that the main shall cross their respective rights of way without damage to their property and satisfactory to themselves.

"*Permission to make these various crossings shall be obtained by the Water Department.*"

Both parties to the contract recognized that in laying the main across the rights of way of the railroad companies, they would be confronted with unusual difficulties. They expected to encounter the opposition of the railroad companies, as the very thing that presented a problem in laying the water main from Absecon to Atlantic City presented a greater problem to the railroads in operating their trains over a parallel course. These difficulties arose in common from the marsh over which the water main and the railroad beds were laid. The rights of way of the railroads consisted of a soft bottom marsh, which had to be filled in and built up in order to obtain foundations of a rigidity and stability sufficient to permit the operation of trains. It was evident, therefore, that the railroad companies would not assent to the construction of the water main under their roadbeds unless assured that they would not be undermined or weakened.

By the terms of the contract, the Board of Water Commissioners undertook to obtain the permission of the railroad companies. Lockwood made no such undertaking. So far, there is no dispute with respect to the construction of the provision. Proceeding upon this understanding, the Board of Water Commissioners asked the permission of the West Jersey and Seashore Railroad Company to lay the main across its right of way. The permission was at first refused, but was eventually granted upon terms, which were that the city should pay the Railroad Company approximately $20,000, the estimated amount necessary to preserve and make safe the roadbed, and that it, the railroad company, at its expense, would make the alterations. These terms were accepted, a contract entered into, and the railroad's

permission obtained. The railroad company then employed Lockwood to do the work according to its own plans and under the supervision of its engineers. Lockwood performed the work under contract with the railroad company, was paid by the railroad company, and made no claim upon the city for the cost thereof. The city contended at the trial that, upon a proper construction of the contract, the cost for this extraordinary amount of work was contemplated and included by Lockwood in his contract price, and that as the sum of $20,000 had been paid or was promised to be paid by the city to the railroad company, the city should be reimbursed for that amount by deducting it from the amount demanded in this suit. The plaintiffs, however, maintained that securing the permission of the railroad company to lay the main across its right of way, was the business of the city, which it could accomplish in its own way and should perform at its own cost. The trial judge refused to charge that the amount paid by the city to the railroad company must be allowed as a set-off, and instructed the jury that the sum paid to the railroad company by the city was not a proper set-off to the plaintiffs' claims, if the amount demanded by the railroad was simply for work which it insisted to be done as a condition precedent to giving its permission to cross its right of way.

The contention of the city is based upon the theory that by the contract, Lockwood undertook "to furnish all the material and do all the work in connection and in accordance with the contract and its specifications," and that this included all the work to be done and materials to be furnished upon and in connection with the main from its beginning to its end, of which the work and materials required in putting the main through the roadbeds of the railroad companies were a part. In support of this contention, it is argued that Lockwood engaged to "co-operate with the proper authorities" of the railroads, and that the work should be done without "damage to their property and satisfactory to themselves," implying that the work thus considered was a part of the work embraced within the contract and within the amount agreed to be paid therefor.

We are not impressed with this argument. It is apparent to us that both parties to the contract recognized that crossing the rights of way of the railroads presented difficulties, physical and otherwise. For some reason, the Board of Water Commissioners, acting for the city, assumed to surmount the difficulty of obtaining the permission of the railroads to cross their beds. Lockwood assumed to put the work through in a manner satisfactory to the railroads without damage to their property. Negotiations with the railroads for permission were conducted solely by the city. Neither in the negotiations nor in the contract ultimately reached were Lockwood and Cherry parties. Before giving its permission, one railroad company demanded that its roadbed be made secure, and required that a re-enforced concrete bridge or culvert be built, under which the main should pass. The negotiations ended in the contract between the city and the railroad company, and the work was done by Lockwood under contract with

226 F.—25

the railroad company. When the structure was completed, Lockwood returned to work under his contract with the city, drove the main under the bridge and through the right of way of the railroad company. The city neither paid nor was asked to pay Lockwood any part of the cost of constructing the concrete culvert under the roadbed of the railroad company, or anything over and above his contract price for putting the main through the property of the railroad company.

The structure built by Lockwood for the railroad company does not appear either in his contract with the city or in the specifications of the contract. His contractual engagement with respect to laying the main through the roadbed of the railroad company was limited to a promise on his part to co-operate with the railroad authorities in order that the main should cross its right of way without damage to its property and satisfactory to itself. This provision does not mean that he should build at his own cost such a structure as the railroad company might demand of him, but means that in doing the city's work upon the railroad property, regard should be given to the railroad's problems, and damage to its property avoided. On the other hand, when the city, by the terms of the contract, undertook to obtain the permission of the railroad company to lay the water main across its roadbed, it made an engagement which, though difficult, it was required to carry out, and if the railroad's permission cost money, the city had to pay for it. We are of opinion that the trial court committed no error in refusing to instruct the jury to allow the city as a set-off the amount paid the railroad company in securing its permission to build the main across its premises.

[8] 4. The city urged the disallowance of assigned claims that were for extra materials. The language of the assignment is:

"Do hereby sell, assign * * * all funds due or to grow due * * * in payment for all *extra work* ordered under the contract."

The city insisted that "extra work" means extra *labor,* and does not mean or include extra *materials.*

We are of opinion that in refusing to charge this request, no error was committed by the trial court. In assigning claims for extras under the contract, we assume the parties intended the extras contemplated by the contract. In dealing with the subject of extras, the parties to the contract used the phrase "extra work," and the parties to the assignment employed the same phrase. In the contract, the words "extra work" clearly mean and include both labor and materials, and in using the same words in the assignment, it is certain the parties intended to assign all that those words meant in the contract. McQuillin, Municipal Corporations, vol. 4, p. 4180; United States Wood Preserving Company v. New York, 138 App. Div. 841, 123 N. Y. Supp. 538; Casgrain v. Milwaukee County, 81 Wis. 117, 51 N. W. 88.

[9] 5. With respect to the assignment of the contract, it is provided that:

"The said party of the second part hereby further agrees not to reassign or transfer, by attorney or otherwise, or sublet any part of the work herein specified, to any person or persons without the written consent of the party of the first part endorsed thereon."

In view of this provision, the right of Warren Brothers Company and Cherry to recover in this action, depends upon the legality of the assignments by Lockwood to Cherry, and by Lockwood and Cherry to Warren Brothers Company.

The city contends, first, that the Board was without power to consent to the assignment by Lockwood to Cherry, and, second, there is no evidence showing that the Board of Water Commissioners gave its written consent to the assignment by Lockwood to Cherry. Opposed to this, Cherry, first, cited the provision of the contract in which the Board reserved to itself power to consent, and second, produced testimony that such consent was given in writing. This issue of fact was submitted to the jury and by it determined in favor of Cherry. This establishes the legality of the assignment to Cherry.

The assignment to Warren Brothers Company was clearly not a letting, assigning or transfer of "any part of the work herein specified," but was an assignment of the assignor's right, title and interest in and to "all funds due or to grow due from the Board of Water Commissioners of the City of Atlantic City or from the City of Atlantic City, in payment for all extra work ordered under the contract." An assignment of monies due and to become due was not an assignment of the obligation to do the work. Another contractor was not substituted to do the work engaged to be done by Lockwood. Against the incompetence or unfitness of such an assignee contractor, the city protected itself by the provision quoted. As a matter of fact, the work was begun and completed by Lockwood, the original party to the contract, while a large part of the payment therefor was made to or is now claimed by Lockwood's assignees. Such an assignment of interest in the payment of money as was made to Warren Brothers Company is not to be regarded as a contravention of a provision against the assignment of the contract. Hipwell v. National Surety Co., 130 Iowa, 656, 105 N. W. 318; Dickson v. St. Paul, 97 Minn. 258, 106 N. W. 1053; Snyder v. New York, 74 App. Div. 421, 77 N. Y. Supp. 637.

[10] 6. The city maintains that the plaintiffs in this action cannot recover, because their claims were not submitted to the Mayor of Atlantic City for approval before the institution of this suit. This contention is based upon the Statute of New Jersey of 1904, entitled "An act regulating the receipt and disbursement of money and the passage of ordinances pertaining thereto in any city in this state," chapter 128, page 259, by which it is provided that:

"No warrants for the payment of money shall be delivered by any officer of any such city to any person, firm or corporation until the bill or claim intended to be paid thereby shall have been presented to the mayor for his approval."

The testimony shows that the claims of Warren Brothers Company were approved by the Board of Water Commissioners and presented to the Comptroller, by whom payment was refused, and thereafter the bills were not presented to the mayor for his approval. The contention is that the presentation of the bills to the mayor for his approval is necessary not only to secure payment, but as a prerequisite to the institution of suit for the recovery of payments refused. Curley v.

Freeholders, 66 N. J. Law, 401, 408, 49 Atl. 471, and Bourgeois v. Freeholders, 82 N. J. Law, 82, 81 Atl. 358.

While we are in accord with the contention of the city that "the act of 1904 was designed to compel creditors to present their claims to the mayor in order that he might inspect the bills and pass upon them before they are paid by the body which contracted," we are not inclined to yield to what the city considers the corollary of that proposition, that when payment is refused, a presentation of the bill to the mayor for his approval is necessary before payment of the debt may be enforced by an action at law. In the first place, it is a question whether the presentation of the bill to the mayor must be made by the *party* to whom the money is due, for while the fourth section of the statute provides that:

"No warrants for the payment of money shall be delivered * * * until the bill or claim intended to be paid thereby shall have been presented to the mayor for his approval,"

the seventh section provides that:

"The body or board *presenting* any claim or bill to the mayor for approval shall have power * * * to order the said bills so disapproved to be nevertheless paid."

This language would seem to indicate an intention that:

"In the internal regulation of a municipal government, its officers shall take certain steps in the payment of money for the protection of the city, and to that end the body creating a debt and ordering it paid, shall present it to the mayor for his approval, as a check upon improper disbursements."

In the absence of clear expression, it would be going far to hold that the statute intended that a creditor, before he could enforce his rights, should be required, conceivably by an extraordinary action at law, to compel the officer who refused him payment to present his bill to the mayor for approval. The approval of the bill by the mayor would not affect the legality of the claimant's cause of action any more than the refusal of payment by the disbursing officer, and as the purpose of the statute is to obtain the mayor's approval before money is disbursed, there is no object in securing the approval of the mayor to a claim with respect to which payment has been refused and disbursement is not to be made, except upon judgment.

The New Jersey Act of April 4, 1871, P. L. 92, has a provision similar in purpose to the provision of the Act of 1904 under consideration. It is that:

"It shall not be lawful for the Board of chosen freeholders, * * * of any county, * * * to pay or disburse out of any of the monies of the said county, * * * to any person, unless the person claiming or receiving said monies shall first present to the party or parties paying any such monies, a detailed bill of items or demand, * * * with the affidavit of the party claiming payment of said bill or demand that the same is correct."

Under that statute, the case of Riverside T. P. v. Stewart, 211 Fed. 873, 128 C. C. A. 251, was instituted, and relying upon the construction of that statute as given it by the Courts of New Jersey, this court said:

"It is conceded that Stewart presented to the township no verified statement of his claim before suit. The proofs show that prior to suit the township denied it owed him anything and indeed claimed to recover a large sum against him. The contention of the defendant that this action would not lie the court below denied, saying:

" 'The manifest purpose of the statute, viz., the enjoined payment of monies without sworn proof of the correctness of the claim in detail, does not contemplate a case where the plaintiff's claim is totally repudiated, and he is relegated to an action at law to prove it, wherein sworn proof of his claim in detail is necessary to reduce it to judgment.'

"We find no error in the court's so holding. Clearly this act was meant to create certain statutory requirements in the absence of which municipal boards could not pay public money to anyone. It was meant to cover cases where the money was being paid, to forbid its being paid until these statutory prerequisites were observed, and 'to protect the body that audits its bills by giving them the protection of a sworn claim.' Wahl v. Atlantic City [84 N. J. Law, 68] 85 Atl. 1024. The purpose of that statute to prevent improper municipal payments, and the mischief it was meant to prevent, had no application where such municipality was not only refusing to pay but denying liability. No reason is now suggested why a person, payment of whose claim is contested, should, in order to enable him to sue, be required to present a verified statement thereof to the municipality. This holding has the support of Downie v. Passaic, 54 N. J. Law, 223, 23 Atl. 954, where the Supreme Court held that:

" 'The statutory prohibition seems to be applicable when a claim is undisputed; a verification of an account can serve no useful purpose when the debt is wholly repudiated and the creditor is obliged to prove the justice of his demand in a court of law.' "

Both in the case cited and in the case under consideration, the claims were wholly repudiated and payment thereof absolutely refused.

We are therefore of opinion that the requirement of the Act of 1904, like that of the Act of 1871, dealing with the method of disbursing funds by public officers, does not extend to situations in which funds are not disbursed and in which the disbursement of funds is refused.

We have given very deliberate and serious consideration to each of the thirty-eight assignments of error, and are satisfied that in so far as they present questions of law for review by an appellate court, as distinguished from questions of fact already determined by the jury, they disclose no error in the trial and judgment of this case.

The judgment below is affirmed.